HOFFMAN EMPLOYMENT LAWYERS, LLP
MICHAEL HOFFMAN (SBN 154481)
LEONARD EMMA (SBN 224483)
STEPHEN NOEL ILG (SBN 275599)
580 California Street, Suite 1600
San Francisco, CA 94104
Tel   (415) 362-1111
Fax   (415) 362-1112

Attorneys for Plaintiff LUIGI FUSCO

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIGI FUSCO, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AKTIENGESELLSCHAFT, AUDI AG, and DOES 1 through 100,<br><br>Defendants. | Case No. 3:15-cv-05590<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATION OF MAGNUSON-MOSS WARRANTY ACT;**<br>2. **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT;**<br>3. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq.;**<br>4. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, et seq.;**<br>5. **COMMON LAW FRAUD;**<br>6. **BREACH OF IMPLIED WARRANTY; and**<br>7. **BREACH OF EXPRESS WARRANTY.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff LUIGI FUSCO ("Plaintiff," "Named Plaintiff," and/or "Mr. Fusco"), on behalf of himself and all others similarly situated (the "Class Members"),  brings this action against Defendants Volkswagen Aktiengesellschaft ("Volkswagen AG"), Volkswagen Group of America, Inc. ("VWA"), and Audi AG (collectively, "Volkswagen" or "Defendants"). Based on information and belief and the investigation of Plaintiff's counsel, Plaintiff alleges as follows:

**THE PARTIES**

1.      At all times material herein, Plaintiff was and is a competent adult and resident of the State of California, Los Angeles County.  Plaintiff is in the business of selling and installing solar power systems. In 2014, he purchased a Model Year 2015 VW Golf Diesel.  Plaintiff purchased this vehicle for business purposes specifically because it was advertised as being a clean, environmentally friendly vehicle that also provided excellent power, performance, and fuel mileage.  Furthermore, driving such an environmentally friendly vehicle is paramount to maintaining Plaintiff's business reputation and image as a conscious environmentalist, and therefore, Plaintiff would not have purchased the vehicle but for Volkswagen's representations regarding the "clean" emissions characteristics of the Golf Diesel.

2.      Defendant Volkswagen Aktiengesellschaft ("Volkswagen AG") is a German car corporation established in 1937, organized and existing under the laws of Germany, with its principal place of business located in Wolfsburg, Germany.  Volkswagen AG is the parent company of defendant Volkswagen Group of America, Inc.  Defendant Volkswagen Group of America, Inc. ("VWA") is  a wholly owned subsidiary of Volkswagen AG, and is a corporation organized and in existence under the laws of the  State  of  New  Jersey  and  registered  with  the Secretary  of  State  to  conduct  business  in California.  VWA is one of the world's largest producers of passenger cars.   VWA sells the Beetle, Beetle Convertible, CC, Eos, e-Golf, Golf, Golf GTI, Golf R, Golf SportWagen, Jetta, Passat, Tiguan, and Touareg vehicles through approximately 652 independent U.S. dealers. VWA's operations in the United States include research and development; parts and vehicle processing;  parts  distribution  centers;  sales, marketing  and  service  offices;  financial  service centers; and its state-of-the-art manufacturing facility in Chattanooga, Tennessee.

- 1 -

3.     Defendant Audi AG ("Audi") is a German automobile manufacturer that designs, engineers, produces, markets, and distributes luxury automobiles that are among the best-selling in the world.  Audi is a majority owned (99.55%) subsidiary of Volkswagen AG. 12.

4.     Volkswagen also operates an Electronics Research Laboratory (ERL), located in Belmont, California. The ERL is part of the global research and development network that supports Volkswagens' brands, including Audi, Bentley, Bugatti, Lamborghini and VW.  The ERL is a subsidiary of VWA, with the parent company being Volkswagen AG. The ERL was touted as Volkswagen's largest research facility outside of Germany, and takes advantage of its proximity to Silicon Valley to cultivate numerous partnerships to enhance the knowledge of Volkswagen.

5.     During the relevant time, each Defendant acted as an agent, servant, employee, and/or joint venture of the other Defendants and in doing the things alleged acted within the course of such agency, employment, and/or in furtherance of the joint venture to accomplish the scheme. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Defendants. While each of the Defendants are separate legal entities, each Defendant works together under a common identity as portrayed to the public and there is sufficient unity of interest and control between each Defendant such that the acts of one are for the benefit and can be imputed to the acts of the other. In addition, during the relevant time, Volkswagen was engaged in the business of designing, manufacturing, constructing, assembling, marketing, advertising, promoting, distributing, and/or selling automobiles and other motor vehicles and motor vehicle components throughout the United States.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) in that the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and this matter is a class action in which certain Class Members are citizens of states other than each Defendant's state of citizenship. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff and the Class have brought a claim pursuant to 15 U.S.C. § 2301, et seq. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). This Court has personal

1  jurisdiction over Plaintiff because Plaintiff resides in the County of Los Angeles, California, and

2  submits to the Court's jurisdiction. This Court has personal jurisdiction over Volkswagen

3  because Volkswagen has conducted and continues to conduct substantial business in California

4  and has sufficient minimum contacts with California in that: (1) Volkswagen's Electronics

5  Research Laboratory (ERL) is located in Belmont, California; (2) its Test Center is located in

6  Oxnard, California; (3) its Design Center is located in Santa Monica, California; (4) its Pacific

7  Region Office is located in Westlake Village, California; and (5) one of its Parts Distribution

8  Centers is located in Ontario, California.

9        7.      Venue is proper in this District under 28 U.S.C. § 1391 because Volkswagen

10  conducts business in this District, including vehicle sales, and maintenance and operation of a

11  Test  Center, Design  Center, Volkswagen's Western Regional Headquarters, and Parts

12  Distribution  Center.  Many of Volkswagen's acts complained of herein occurred within this

13  District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's

14  claims, including the false and misleading advertising alleged herein, occurred in, emanated from

15  and/or were directed from this District. Venue is also proper in this Court because Volkswagen

16  has marketed, sold and leased the subject vehicles in, and therefore caused harm to

17  Class.

18                      **NATURE OF THE ACTION**

19        8.      In July 2010, Volkswagen AG's CEO, Martin Winterkorn, unveiled

20  Volkswagen's goal of becoming the world's biggest automobile manufacturer by 2018, which

21  plan included an expansion of Volkswagen's new car lab in the Bay Area.  Part of Volkswagen's

22  strategy was positioning itself as "the most eco-friendly automaker in the world . . . . For

23  Volkswagen, 'green mobility' means setting new ecological standards in automobile

24  manufacturing in order to put the cleanest, most economical and at the same time most

25  fascinating cars on the road."

26        9.      By 2015, Volkswagen was on track to meet these goals.  As the Executive

27  Director of VWA's Belmont, California, Electronics Research Laboratory, Ewald Goessmann

28  emphasized in a June 29, 2015 Press Release regarding test results on alternative fuels:

"Evaluations like this are part of Volkswagen's broader holistic environmental strategy which underscores the company's commitment to the environment by deploying a comprehensive approach which addresses carbon reduction and sustainability at each part of the vehicle lifecycle."

10.    In 2014, however, government investigators with the California Air Resources Board and the Environmental Protection Agency discovered Volkswagen's scheme. In September 2015, investigators revealed that since model year 2009, Volkswagen had successfully evaded compliance with U. S. emissions standards by installing software in its 2.0L TDI Clean Diesel engines deliberately designed to deceive emissions testing devices and to conceal the fact that certain models of Volkswagen's diesel vehicles released emissions of the pollutant nitrogen oxide ("$N_2O$") up to 40 times higher than what was legally permitted under normal driving conditions. Among other ill effects, these pollutants are known to be linked to numerous debilitating respiratory diseases, including asthma attacks, bronchitis, and emphysema. Other correlated health ailments include lung damage and premature death.

11.    On or about September 18, 2015, the Obama Administration issued a recall order that Volkswagen intentionally manipulated the emissions systems of approximately 500,000 U.S. vehicles over multiple model years. Exhibit 1 hereto. The Obama Administration directed Volkswagen to recall all diesel-power vehicles in which Volkswagen had illegally placed software in an effort to bypass requisite standards for reducing smog.

12.    Volkswagen has admitted to its misconduct, significantly tarnishing the brand's reputation and causing the value of its cars to plummet. As Volkswagen's CEO conceded before resigning his position in September 2015: "Millions of people all over the world trust our brand, our cars, and our technology. I am deeply sorry we have broken this trust."

13.    Plaintiff, on behalf of herself and on behalf of a class of California residents who purchased or leased Class Vehicles (hereinafter, the "Class Members"), brings this action challenging Volkswagen's deceptive representations and omissions regarding the emissions standards compliance and environmental-friendliness of nearly 500,000 U.S. vehicles in the 2009 to 2015 model years. As part of Volkswagen's broad-based media advertising campaign designed

1    to capitalize on public concern over human-induced climate change, Volkswagen used high-

2    impact television, the Internet, and print advertisements that misleadingly touted the fuel

3    economy, power, and "green" credentials of Volkswagen's supposedly "clean" diesel vehicles.

4    Volkswagen claimed that the vehicles met or exceeded federal emissions standards when in fact

5    the vehicles were intentionally built to evade federal and state pollution control standards.

6         14.    Specifically, Volkswagen knowingly and intentionally manipulated its vehicles'

7    emissions systems to deceitfully operate by installing so-called "defeat devices" designed to

8    evade mandatory periodic state emissions testing.   Equipped with these devices, Volkswagen's

9    vehicles emit significantly less harmful emissions during testing than during normal driving

10   conditions.  During regular operation of Volkswagen's supposedly environmentally-friendly

11   vehicles, the vehicles in fact emit up to 40 times the standard permitted by U.S. laws and

12   regulations. The defective devices in Volkswagen's vehicles operate by concealing the vehicles'

13   emission of the pollutant $N_2O$, which contributes to the creation of ozone and smog. The

14   pollutants are known to be linked to numerous debilitating respiratory diseases.

15        15.    As a result of Volkswagen's illegal conduct, every Volkswagen Golf Diesel was

16   deceitfully sold to consumers based on knowingly false representations concerning the actual

17   environmental friendliness, fuel efficiency, and performance of the vehicle. Volkswagen's

18   widespread advertising, based on these same factors for the Volkswagen Golf Diesel, was also

19   false and misleading. Volkswagen's misrepresentations and omissions regarding the Volkswagen

20   Golf Diesel' environmental credentials, fuel efficiency, and performance in their advertising,

21   public statements, and marketing information were a material factor in inducing Plaintiff and

22   Class Members to purchase the Volkswagen Golf Diesel.

23        16.    As a result of Volkswagen's scam, nearly millions of conscientious consumers

24   worldwide purchased the Volkswagen Golf Diesel based on misleading and downright false

25   claims of the vehicle's attributes. Had Plaintiff and Class Members known that the Volkswagen

26   Golf Diesel's appealing combination of high fuel mileage and performance, with low emissions,

27   were but a calculated scheme by Volkswagen to secretly defeat environmental protection

28   standards, Plaintiff and Class Members would not have purchased or leased their respective

1    Volkswagen Golf Diesel, or in the alternative, Plaintiff and Class Members would have paid

2    significantly less for the vehicles than they did.

3        17.    This lawsuit seeks to remedy Volkswagen's premeditated scheme to defraud

4    consumers. In 1970, Congress enacted the first major Clean Air Act, which has been amended.

5    The Clean Air Act required a 90% reduction in emissions from new automobiles by 1975.  In

6    1970, Congress also established the Environmental Protection Agency ("EPA"), which has broad

7    responsibility for regulating motor vehicle pollution.

8        18.    Congress' purpose in creating the Clean Air Act, in part, was "to protect and

9    enhance the quality of the Nation's air resources so as to promote the public health and welfare

10   and the productive capacity of its population," and "to initiate and accelerate a national research

11   and development program to achieve the prevention and control of air pollution." 42 U.S.C. §

12   217401(b)(1)-(2).

13       19.    The Clean Air Act requires vehicle manufacturers to certify to the EPA that their

14   products will meet applicable federal emission standards to control air pollution. The EPA

15   administers a certification program to ensure that every vehicle introduced into United States

16   commerce satisfies applicable emission standards.  Under this program, the EPA issues

17   certificates of conformity and approves the introduction of vehicles satisfying the standards into

18   United States commerce.  Every vehicle sold in the United States must be covered by an EPA-

19   issued certificate of conformity. This includes light-duty motor vehicles such as the Class

20   Vehicles at issue in this Complaint; the Volkswagen Golf Diesel needed to satisfy emission

21   standards for certain air pollutants, including $N_2O$. 40 C.F.R. § 86.1811-04; Clean Air Act §

22   101(b)(1) - (2). California, through the California Air Resources Board ("CARB") also regulates

23   emissions standards for vehicles.  California's Low Emission Vehicle Regulations have emission

24   reduction standards for automobile.

25       20.    <u>VW Seeks to Increase Sales in the 1990s:</u> In 1949, Volkswagen introduced the

26   "VW Bug" in the United States.  Since then more than 5.5 million of this iconic car have been

27   sold in this country.  For many years, Volkswagen was the top-selling foreign car in the United

28   States, but by the early 1990s, Japanese imports had completely overtaken Volkswagen and other

European imports. Volkswagen has tried ever since, mostly without success, to increase its sales in the United States.  By the mid-2000s, Volkswagen sought to diversify its car line-up, including designing vehicles for the United States market.

21.    As part of this effort, Volkswagen increased its research and development budget, spending over $10 billion in 2010.  Volkswagen greatly relied on its California-based Electronics Research Laboratory.  Volkswagen opened the Electronics Research Laboratory in Sunnyvale, California in 1998 with three employees, and in 2002 moved the laboratory Palo Alto.  In July 2010, Volkswagen's CEO Martin Winterkorn visited the Palo Alto laboratory and announced: "We want to take Volkswagen to the top of the industry by 2018."

22.    In May of 2011, Volkswagen moved the Electronics Research Laboratory to a 157,000 square foot office building in Belmont, California.  "The Electronics Research Laboratory represents the entire Volkswagen Group in applied research and development . . . . The Electronics Research Laboratory is another example of Volkswagen Group of America's investment in the U.S.," Volkswagen Group of America President and CEO Jonathan Browning said, adding that Volkswagen Group has made a significant multi-million dollar investment in the new facility. "The commitment of the [Electronics Research Laboratory] teams to automotive innovation will benefit drivers through safer, more eco-friendly driving experiences, prompted by the technological heartbeat of Silicon Valley.  I am excited to help showcase the next generation of mobility today."

23.    The research and innovation by Volkswagen through the Electronics Research Laboratory and other laboratories was but one part of Volkswagen's plan.  Indeed, as revealed by Volkswagen's EU Group's promotional brochures touting its Global Research activities, their Belmont, California, Electronic Research Lab appears to have been a focal point of the scheme to defraud the public.  In addition, as part of its business plan to increase sales and market share, Volkswagen increased its emphasis on diesel cars and engaged in an extensive marketing campaign to sell more cars in the United States.

24.    One focus of Volkswagen's plan was to increase sales of its diesel vehicles.

Volkswagen knew that consumers wanted environmentally friendly cars while still having fuel efficiency and powerful cars. Volkswagen implemented a plan to increase sales of its diesel cars Volkswagen Extensively Marketed Its Diesel Cars as Having Less Greenhouse Gas Emissions Than Other Cars While Having Greater Fuel Efficiency and Performance.

25.     Advertising has been a key part of Volkswagen's business plan.  For the period of 2011-2013, Volkswagen spent over $2.9 billion per year worldwide on advertising. As explained by Volkswagen's marketing chief, Tim Ellis in *USA Today*, even though 2008 was a tough ad year for Volkswagen, its ad expenditures would be the same in 2009.

26.     In 2009, Volkswagen introduced a campaign called "Meet the Volkswagens": "Five ads running over eight weeks will promote fuel efficiency, green credentials, cost of ownership and safety by highlighting VW's performance compared with rival brands . . . . Part of the big plan is for Volkswagen to grow the brand in the U.S.," says Ellis. "As part of that strategy, we can no longer afford to be a small, quirky niche brand here." The marketing included Volkswagen using Facebook with a link to a blog, tdi.vw.com/tdi to raise awareness of its "clean" diesel models. Part of its campaign was the slogan that "Today's diesel-powered automobiles aren't your father's diesel-powered automobiles."  VW had a simple message in each instance: "its autos are fuel-efficient, green and safe vehicles that won't break the bank."

27.     The Volkswagen Golf Diesel was marketed as having very good fuel economy and environmentally sound because it puts out less greenhouse gas emission than what a gasoline engine would. It was advertised as cutting out the particulate emissions by a significant percentage and the emissions of nitrous oxide are cut by a significant percentage.

28.     From television to print advertisements to interviews to social media, Volkswagen represented the environmental friendliness and fuel efficiencies of the Volkswagen Golf Diesel to the public. The advertising and promotion paid off as auto critics starting praising Volkswagen's diesel cars and sales increased.

29.     In 2008, Jeep, Mercedes-Benz and Volkswagen were the only manufacturers selling diesels in light-duty vehicles in the United States.

- 8 -

30.     Edmunds, a highly regarded vehicle analyst, however, did not recommend any Volkswagen diesel cars as its top recommended.

31.     In 2011, Edmunds recommended the Golf as one of its top recommended diesels, and stated:

32.     Edmunds stated, "Our favorite is the Volkswagen Golf TDI, which exploits the traditional fuel-efficiency of its turbocharged four-cylinder diesel engine for truly frugal motoring when it comes to fuel cost per mile."

33.     In the first half of 2015, Volkswagen passed Toyota as the world's largest automaker.

34.     Volkswagen AG sold 5.4 million vehicles, including 295,000 in the United States, to Toyota's 5.02 million vehicles.

35.     Volkswagen's projection of being the largest automaker in the world by 2018 appeared to be coming true, meeting the goal three years early.

36.     The Truth Is Revealed:  Volkswagen Admits to Knowingly and Intentionally Manipulating Volkswagen Golf Diesel's Emission Systems to Conceal the Fact That Volkswagen Diesel Vehicles Were Actually Emitting Up to 40 Times the Legal Limit: In fact, the Volkswagen Golf Diesel were not environmentally friendly with fuel efficiency and power, and Volkswagen had knowingly and intentionally manipulated the Golf Diesel's emission system to conceal that fact.

37.     The true facts were that the vehicles were actually emitting 8 up to 40 times the legal limit. Volkswagen had hidden its scheme for over six (6) years, but it was 9 finally revealed to the pubic in September of 2015. CARB  and  the  EPA  were  first  alerted  to  emissions problems  with  the  Volkswagen automotives in May 2014, when the West Virginia University's (hereinafter, "WVU") Center for 12 Alternative Fuels, Engines & Emissions published results of a study that found significantly 13 higher in-use emissions from two of Volkswagen's light-duty diesel vehicles.

38.     Over the course of the year, Volkswagen continued to assert to both the CARB and the EPA that the increased emission from these vehicles could be attributed to various

- 9 -

technical issues and unexpected in-use conditions. Volkswagen issued a voluntary recall in December 2014 to address the issue. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, the CARB broadened the 20 tested vehicles to pinpoint the exact technical nature of the vehicles' poor performance and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by Volkswagen explained the higher test results consistently confirmed during the CARB's testing and it became clear that the CARB and the EPA would not approve certificates of conformity for Volkswagen's 2016 model year diesel vehicles until Volkswagen could adequately explain the anomalous emissions and ensure that the 2016 model year vehicles would not have similar issues. Only then did Volkswagen admit it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emission testing.

39.     Volkswagen Admits to Fraudulently and Intentionally Evading Federal and State Clean Air Emissions Standards: On September 18, 2015, the EPA issued a notice of violation (hereinafter, "NOV") of the Clean Air Act, 42 U.S.C. §§ 7401-7671(q), and its implementing regulations to Volkswagen. Ex. 1. Amongst other allegations, the NOV alleges that four-cylinder Volkswagen diesel cars from model years 2009-2015 contained software "manufactured and installed" by Volkswagen to deliberately circumvent EPA emission standards for certain air pollutants. "Therefore, VW violated section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B)." CARB also issued its own letter regarding Volkswagen's violations. Ex. 3. "Defeat devices" bypass, defeat, or render inoperative elements of a vehicles' emission control system that exist to comply with Clean Air Act emission standards. Defeat devices, such as those installed in the Volkswagen Golf Diesel, sense whether the vehicle is being tested for compliance with EPA emission standards based on various inputs, including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and

barometric pressure. These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes.

40.     Due to the existence of the defeat devices in the Volkswagen Golf Diesel, the Volkswagen Golf Diesel do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them. Therefore, Volkswagen also violated § 203(a)(1) of the Clean Air Act, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

41.     By making and selling vehicles with defeat devices that allowed for higher levels of air emissions than it certified to the EPA, Volkswagen violated the Clean Air Act. "Using [these] defeat devices in cars to evade clean air standards is illegal and a threat to public health," said Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance.

42.     In addition to Volkswagen AG's CEO Winterkorn's admission of Volkswagen's illegal misconduct when news of the 7-year-long scandal broke, VWA head Michael Horn, also admitted that Volkswagen had "totally screwed up . . . Let's be clear about this, our company was dishonest with the [EPA] and the California air resources board [sic], and with all of you."

43.     As a result of Volkswagen's admitted scandal, Volkswagen's brand and reputation have been irreparably damaged, as evidenced by Volkswagen's ever-tanking stock price in the hours and days following the EPA's NOV.  The Administration's forced recall has also damaged Volkswagen's brand, reputation and re-sale values.  Volkswagen recognizes the damage to their brand and reputation, setting aside $7.2 billion to pay for their emissions cheating scheme. "The Volkswagen brand is at risk," Mike Jackson, CEO of Auto Nation, told CNBC today [September 23, 2015].  Internal investigations revealed that Volkswagen's "misconduct," originally thought by U.S. regulators to involve some 500,000 vehicles, in fact could involve nearly 11 million vehicles worldwide.35 Over 77,000 of these Volkswagen Golf Diesel were sold in California alone.

44.     <u>Volkswagen's Defeat Devices Were Sophisticated Devices Intentionally</u>

<u>Manufactured and Installed in Volkswagen Golf Diesel in Violation of U.S. Law</u>: Volkswagen's Volkswagen Golf Diesel were equipped with a sophisticated software algorithm that was designed to detect when the vehicle was undergoing official emissions testing. Full emissions controls were turned on only during these mandated tests. During all other times of normal driving, the effectiveness of the Volkswagen Golf Diesel' pollution emissions control devices was manipulated by Volkswagen to be greatly reduced.

45.     Specifically, during EPA emission testing, the Volkswagen Golf Diesel' electronic control module (hereinafter, "ECM") ran software which produced compliant emission results under an ECM calibration that Volkswagen referred to as the "dyno calibration" (referring to the dynamometer, the equipment used in emissions testing). At all other times during normal vehicle operation, the software was activated and the Volkswagen Golf Diesel's ECM software ran a separate "road Calibration" which reduced the effectiveness of the emission control system.

46.     As a result, emissions of $N_2O$ increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle.

47.     Based on the design of Volkswagen's defeat devices, it is clear that Volkswagen knew that its devices would bypass, defeat, or render inoperative elements of the vehicle related to compliance with the Clean Air Act emission standards because "the software was designed to track the parameters of the federal test procedure and cause emission control system to underperform when the software determined that the vehicle was not undergoing the federal test procedure."

48.     Put simply, Volkswagen's defeat device results in cars that meet emissions standards in the laboratory or testing station, but during everyday operation, the device is programmed in such a manner that emits NOx at up to 40 times the standard permitted by U.S. health regulations.

49.     <u>The Defeat Devices Installed by Volkswagen in the Volkswagen Golf Diesel Emit Pollutants Known to Cause Serious Health Problems</u>: The Clean Air Act and the regulations promulgated thereunder aim to protect human health and the environment by reducing emissions

of $N_2O$ and other pollutants from mobile sources of air pollution. $N_2O$ pollution generates nitrogen dioxide, and contributes to ground-level ozone and fine particulate matter.

50.     Exposure to these pollutants has been associated with a range of serious health effects, including increased asthma attacks and other respiratory illnesses. Exposure to ozone and particulate matter—which causes cancer—has been linked with an increased risk of heart attacks, strokes, and premature death due to respiratory-related or cardiovascular-related effects. Recent studies have shown that not only can nitrogen dioxides cause or exacerbate a number of health conditions, but exposure to these toxins are correlated with lower birth weight and smaller head circumference in babies. Particularly at risk for health effects of these pollutants are the children, the elderly, and people with pre-existing respiratory disease.

51.     By Engaging in this Scheme, Volkswagen Maintained Its Dominance in the Diesel Vehicle Industry to the Detriment of Consumers and the Environment: Both the United States and California governments have encouraged the use of diesel engines to meet fuel efficiency and greenhouse gas targets.  As a result, the largest selling actor for diesel cars is their fuel economy and low carbon emissions as compared to standard gasoline engines.  Diesel fuel also contains more energy density than petrol.  These characteristics 6 result in anywhere from 20% to 40% better fuel economy, and are also known for giving vehicles 7 more powerful hauling capacity.  "Some of the diesel cars can go 600, 700 miles on a single fill-up. That's a very high value for many consumers," says Allen Schaeffer, executive director of the Diesel Technology Forum. However, this appealing combination comes at a price—diesel cars emit far more $N_2O$ than standard gasoline engines.  Diesel engines also cost consumers substantially more upfront when purchasing the vehicles.  Class Members paid a significant premium for their Volkswagen Golf Diesel, purportedly designed to be "[e]fficien[t].  Now available without compromise." "Feel the fun, torque-y, turbocharged power of a TDI Clean Diesel engine and you'll almost forget it's efficient."  These representations and the others detailed, supra, were false. Volkswagen's defeat devices also had associated "benefit" (to Volkswagen) other than allowing their Volkswagen Golf Diesel to pass by emissions tests unnoticed, experts in automotive technology explained that disengaging the pollution controls on a diesel-fueled car

- 13 -

can yield better performance, including increased torque and acceleration. These features increased the Volkswagen Golf Diesel' selling appeal. "When the pollution controls are functioning on these vehicles, there's a tradeoff between performance and emissions," said Drew Kodjak, executive director of the International Counsel on Clean Transportation, a research group. "This is cutting corners."

52.    While hiding from the public that it was intentionally disregarding United States regulations put in place to protect consumers and the environment, Volkswagen dominated the U.S. diesel-car market. Indeed, Volkswagen's sales of diesel vehicles in the United States in 2013 comprised 78% of all light-vehicle diesel deliveries nationwide.

53.    According to an analysis of federal incentives, as a result of Volkswagen's scheme, United States taxpayers were also tricked into shelling out millions of dollars in green subsidies for "clean" Volkswagen Golf Diesel due to $1,300 tax credits available to buyers of thousands of Volkswagen models sold prior to the revelation of the fraud.

54.    As Oliver Schmidt, manager of VWA's U.S. environmental office boasted in 2013, Volkswagen first offered a diesel car in the U.S. in 1976 and has dominated the niche ever since. As such, Schmidt continued, "[t]he Volkswagen Groups is a leader in clean-diesel technology." What Schmidt neglected to disclose was that Volkswagen's solid dominance in the diesel niche involved stealthily circumventing the United States emissions laws by tampering their vehicles with hidden software programmed to specifically do so.

55.    <u>Volkswagen Dominated the Diesel Vehicle Industry At the Cost of Well-Meaning Consumers Who Paid a Substantial Premium Price for Volkswagen Golf Diesel That Were Not In Fact "Clean"</u>: To perpetuate its fraudulent scheme of overcoming consumer perceptions of 20 "dirty" diesel vehicles, Volkswagen charged substantial premium on its "clean" 21 diesel vehicles—which Volkswagen ironically marketed under the term "Clean Diesel." Volkswagen proclaimed that "[l]ong range without sacrifice is the promise of TDI Clean Diesel. And Volkswagen has sold more diesel cars in the U.S. than every other brand combined. Promise kept." This promise was not kept, and millions of conscientious consumers

- 14 -

*Fusco v. Volkswagen*
Complaint

worldwide were reasonably duped into believing Volkswagen's "Clean Diesel" ploy—and paid

thousands of dollars more for the diesel "benefits" that Volkswagen knew did not in fact exist.

56.     As seen by the three charts below, Volkswagen charged a significant premium on

all Volkswagen vehicles in which Volkswagen installed its "defeat device."  Table 1 lists the

prices of standard, non-clean diesel vehicle models.   Table 2 lists the prices of Clean Diesel

models; a substantial price increase can be compared between Table 2 and Table 1.  Table 3

calculates and compares  the  difference—the  unsubstantiated  premium  consumers  paid  as  a

result  of Volkswagen's unfair, deceptive, and fraudulent business practices.

### TABLE 1: Prices of Standard Non-*Clean Diesel*

| Model | Base Price | Mid-Level Price | Top-Line Price |
|---|---|---|---|
| VW Jetta | $18,780 | $19,775 | $20,095 |
| VW Jetta SportWagen | $21,265 | $27,025 | $29,385 |
| VW Beetle | $20,695 | $23,605 | $25,885 |
| VW Golf (2-Door) | $18,495 | N/A | $19,575 |
| VW Golf (4-Door) | $20,175 | $22,625 | $25,225 |
| VW Passat | $21,340 | $24,375 | $23,995 |
| Audi A3** | $30,900 | $33,600 | $39,750 |

### TABLE 2: Prices of *Clean Diesel*

| Model | Base Price | Mid-Level Price | Top-Line Price |
|---|---|---|---|
| VW Jetta | $21,640 | $24,075 | $26,410 |
| VW Jetta SportWagen | $24,575 | $28,025 | $30,385 |
| VW Beetle | $25,330 | N/A | $28,525 |
| VW Golf (2-Door) | $21,975 | N/A | N/A |
| VW Golf (4-Door) | $22,575 | $26,225 | $28,425 |
| VW Passat | $27,095 | $29,125 | $30,850 |
| Audi A3** | $33,200 | $35,900 | $42,050 |

- 15 -

**TABLE 3:**

| Model | Base PREMIUM | Mid-Level PREMIUM | Top-Line PREMIUM |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Jetta SportWagen | $3,310 | $1,000 | $1,000 |
| VW Beetle | $4,635 | N/A | $2,640 |
| VW Golf (2-Door) | $3,480 | N/A | N/A |
| VW Golf (4-Door) | $2,400 | $3,600 | $3,200 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3** | $2,300 | $2,300 | $2,300 |

*All VW pricing gathered from "Wayback Machine" and is dated September 17, 2015.  All TDI models have since been removed from Volkswagen's current website.

**Audi pricing taken from Volkswagen's current website.

57.    "Because by building efficient vehicles that people actually want to drive, we're also building a better future for all of us," stated Volkswagen proudly on its main webpage just a few days ago—which has since disappeared. As it turns out, the only future Volkswagen was building was a future for itself—at the cost of and to the detriment of nearly 11 million conscientious consumers worldwide.

58.    Plaintiff And the Class were Harmed by Volkswagen's Actions:  As a result of Volkswagen's actions, Plaintiff and the Class have been harmed. Plaintiff and Class Members would never have purchased the Volkswagen Golf Diesel, and/or would have paid substantially less for their vehicles. The Volkswagen Golf Diesel have lost value because of Defendants' actions and are not worth as much in a trade or sale as if the vehicle had been as warranted. There is this actual harm and also the harm to the brand, all which decreases the value of the Volkswagen Golf Diesel.

59.    It is likely that the Volkswagen Golf Diesel will be recalled and Plaintiff and the Class will lose the use of their vehicles.  Further, after the Volkswagen Golf Diesel are remediated, the vehicles will have reduced fuel economy and reduced acceleration during real world use in order that the vehicles can comply with federal emission standards.  Accordingly,

1    Plaintiff and Class Members have sustained incidental and consequential damages as herein
2    alleged.

3                            **CLASS ACTION ALLEGATIONS**

4            60.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil
5    Procedure 23 on behalf of herself and all others similarly situated.  Plaintiff seeks to represent a
6    Class (herein, the "Class") initially defined as: All current and former owners of Volkswagen
7    Golf Diesel who reside in the State of California and/or who purchased or leased Volkswagen
8    Golf Diesel in California.  Expressly excluded from the Class are Defendants and their
9    subsidiaries, affiliates, officers, directors, and employees.

10           61.    Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(a), 23(b),
11   23(b)(2), or 23(b)(3).  The proposed Class is composed of tens of thousands of persons dispersed
12   throughout California and joinder is impracticable. The precise number and identity of Class
13   Members are unknown to Plaintiff at this time, but can be obtained from Volkswagen's internal
14   records.

15           62.    There are questions of law and fact common to the members of the Class, which
16   predominate over questions affecting only individual Class Members, inter alia:

17   •    "Whether Volkswagen misrepresented the environmental friendliness, emission standards
18        compliance and credentials, fuel efficiency, and/or performance of the Volkswagen Golf
19        Diesel;
20   •    "Whether Volkswagen misrepresented the emissions levels, fuel efficiency and/or
21        performance that the Volkswagen Golf Diesel could achieve under normal driving
22        conditions;
23   •    "Whether Volkswagen publicized and advertised the environmental friendliness, fuel
24        emission compliance, fuel efficiency and/or performance of the Volkswagen Golf Diesel;
25   •    "Whether Volkswagen's publicity and advertising regarding the environmental
26        friendliness, fuel emission compliance, fuel efficiency and/or performance of the
27        Volkswagen Golf Diesel was misleading;
28   •    "Whether Volkswagen has engaged in unlawful, unfair or fraudulent business practices;

- "Whether Volkswagen's misrepresentations and omissions regarding the compliance with emissions levels, environmental friendliness, fuel efficiency and/or performance of the Volkswagen Golf Diesel has deceived or is likely to have deceived Plaintiff and the Class;

- "Whether Volkswagen's conduct violated the Magnuson-Moss Warranty Act;

- "Whether Volkswagen's conduct violated the California Consumer Legal Remedies Act;

- "Whether Volkswagen's conduct violated California Business & Professions Code § 17200, et seq.;

- "Whether Volkswagen's conduct violated California False Advertising Law (California Business & Professions Code § 17500, et seq.);

- "Whether Volkswagen breach express and/or implied warranties;

- "Whether Volkswagen's unlawful, unfair or deceptive practices have harmed Plaintiff and the Class Members;

- "Whether Plaintiff and the Class Members are entitled to equitable or injunctive relief and,

- "Whether Plaintiff and the Class Members are entitled to damages, including punitive damages."

63.     Plaintiff is a member of the Class and Plaintiff's claims are typical of the claims of the Class.

63.     Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity.  Plaintiff will fairly and adequately protect the interests of the Class and have no interests adverse to or which conflict with the interests of the other members of the Class.

64.     The self-interest of Plaintiff is co-extensive with and not antagonistic to those of absent Class Members.  Plaintiff will undertake to represent and protect the interests of absent Class Members.

65.     Plaintiff has engaged the services of counsel who are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent the Plaintiff and absent Class Members.

66.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistency and varying adjudications, establishing incompatible standards of conduct for Volkswagen.

67.     Volkswagen has acted on grounds generally applicable to the Class, thereby making relief with respect to the Class Members as a whole appropriate.

68.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Prosecution of the complaint as a class action will provide redress for individual claims too small to support the expense of complex litigation and reduce the possibility of repetitious litigation.

69.     Plaintiff anticipates no unusual management problems with the pursuit of this Complaint as a class action.

### FIRST CLAIM
### Violation of the Magnuson-Moss Warranty Act
15 U.S.C. § 2301 et seq.
(*On Behalf of Plaintiff and the Class*)

70.     Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

71.     Plaintiff and the Class bring this claim under the Magnuson-Moss Warranty Act, 2715 U.S.C. § 2301 et seq. ("the Act").

72.     The Volkswagen Golf Diesel are consumer products as defined in 15 U.S.C. § 92. Defendants, and each of them, are a supplier and warrantor as defined in 15 U.S.C. § 2301(4),(5).

73.     Plaintiff and the Class received written warranties as defined in 15 U.S.C. §2301(6)(A) and/or (B), which Defendants have breached.

74.     Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).  They are consumers because they bought a Volkswagen Golf Diesel, they are entitled under California law to enforce both written and implied warranties.

75.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Class are not required to provide Defendants notice of this class action and an opportunity to cure until the time the Court determines the representative capacity of Plaintiff pursuant to Federal Rule of Civil Procedure, Rule 23.

76.     Defendants, and each of them, are liable to Plaintiff and the Class pursuant to 15

U.S.C. § 2310(d)(1) because they breached their written warranties.

77.     Further, in connection with the sale of the Volkswagen Golf Diesel, Defendants gave an implied warranty under the Act.  As part of that implied warranty, Defendants warranted that the Volkswagen Golf Diesel complied with all applicable federal and state regulations, including emission regulations.  Defendants breached the implied warranty of merchantability.

78.     Plaintiff and the Class are entitled to damages caused by Defendants' breaches of the warranties, including economic damages based upon either a return of Class Members purchase price; and/or the difference between the price paid for the Volkswagen Golf Diesel as warranted and the actual value of the Volkswagen Golf Diesel as delivered, and consequential damages.

79.     In addition, Plaintiff and the Class are entitled to reasonable attorneys' fees and costs as determined by the Court.

80.     WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**SECOND CLAIM**
**Violations of the Consumers Legal Remedies Act**
California Civil Code § 1750, et seq.
(*On Behalf of Plaintiff and the Class*)

81.     Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

82.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq. Plaintiff brings this action on his own behalf and on behalf of the Class Members, all of whom are similarly situated consumers within the meaning of California Civil Code § 1781. This claim is for remedies other than damages unless and until the notice requirements have been satisfied, namely providing Defendants with an opportunity to cure, and after the waiting period. Subsequent to completion of the notice requirements, Plaintiff will amend this Complaint and this claim to seek damages under the Consumers Legal Remedies Act.

83.     The acts and practices described in this Complaint were intended to result in the sale of goods, specifically a motor vehicle, in consumer transactions.  Defendants, and each of them, violated, and continue to violate, the CLRA, California Civil Code § 1770, subdivisions 14 (a)(9), (a)(7), (a)(16), and (a)(5) by: "Representing to consumers purchasing the Volkswagen

Golf Diesel that these vehicles' emissions, fuel efficiency and high performance are as advertised and publicized . . . . Representing in their advertising emissions, environmental, fuel efficiency and performance characteristics for the Volkswagen Golf Diesel that are false."

84.     Plaintiff and the Class Members have suffered harm as a result of these violations.

85.     Plaintiff has suffered as a result of Defendants' unlawful conduct because she purchased the Volkswagen Golf Diesel believing, based on Defendants' representations, that the vehicles had certain characteristics that made them environmentally friendly, fuel efficient and with high performance, when in fact these vehicles can have these fuel efficient and performance standards because their emissions do not comply with governmental regulations.  These misrepresentations also resulted in higher purchase prices for the Volkswagen Golf Diesel and the subsequent revelation concerning the "defeat devices" will result in lower resale value.

86.     Defendants, and each of them, concealed from Plaintiff and the Class Members accurate information concerning the emissions standards, fuel efficiency and performance of the Volkswagen Golf Diesel.

87.     Defendants' misrepresentations and omissions described in the preceding paragraphs were intentional, or alternatively, made without the use of reasonable procedures adopted to avoid such errors.

88.     Defendants, directly or indirectly, have engaged in substantially similar conduct with respect to Plaintiff and to each member of the Class.

89.     Unless Defendants are enjoined from engaging in such wrongful actions and conduct in the future, members of the consuming public will be further damaged by Defendants' conduct.

90.     Plaintiff and the Class are entitled to equitable relief on behalf of the Class Members in the form of an order, pursuant to California Civil Code §1780, subdivision (a)(2)-(5), prohibiting Defendants from continuing to engage in the above-described violations of the CLRA.  Plaintiff and the Class further seek reasonable attorneys' fees under Civil Code §1780(e).

91.     WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### THIRD CLAIM
### Violation of the Unfair Competition Law
Cal. Bus. & Prof. Code § 17200, et seq.
(*On Behalf of Plaintiff and the Class*)

92.     Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

93.     California Business & Professions Code § 17200, et seq. prohibits acts of "unfair competition" which is defined by § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

94.     Defendants, and each of them, have violated and continue to violate California Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices, by, inter alia, the following:

•       Violating the CLRA, California Civil Code § 1750, et seq. (as alleged herein);

•       Violating federal environmental laws, including the Clean Air Act; and

•       Violating California Business & Professions Code § 17500, et seq. (as further alleged herein).

95.     Defendants, and each of them, also acted fraudulently and unfairly for purposes of § 17200.  Defendants' misrepresentations and omissions regarding the Volkswagen Golf Diesel' emissions, environmental standards, fuel efficiency, and performance in their advertising, public statements and marketing were a material factor in inducing Plaintiff to purchase his Volkswagen Golf Diesel. Plaintiff suffered injury in fact and lost money and/or property as a result of Defendants' unlawful business acts and practices and Class Members have suffered harm when each was required to pay a purchase price for their Volkswagen Golf Diesel which they never would have purchased if the true facts were known; or paid a price in excess of what a Class Member would have paid if Defendants had accurately disclosed the Volkswagen Golf Diesel' characteristics; and in the form of decreased resale value of the Vehicles.

96.     As a result of Defendants' violations of California Business & Professions Code §17200, et seq., Plaintiff and the Class are entitled to equitable relief in the form of full restitution for the inflated sale price of the Vehicles.

97.     Plaintiff and the Class also seek an order enjoining Defendants from continuing

1    their unlawful business practices and from such future conduct.

2         98.    WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

3                                   **FOURTH CLAIM**
                          **Violation of the California False Advertising Law**
4                               Cal. Bus. & Prof. Code § 17500, et seq.
                              (*On Behalf of Plaintiff and the Class*)
5
6         99.    Plaintiff incorporates by reference each of the paragraphs set forth above as

though fully set forth hereinafter.
7
8         100.   Defendants, and each of them, violated California's False Advertising Law,

Business & Professions Code § 17500, et seq. by using false and misleading messages regarding
9
10   the environmental friendliness, emissions, fuel efficiency and performance of the Volkswagen

11   Golf Diesel in television, print, and Internet advertising.

12        101.   These representations and/or omissions have deceived and are likely to deceive

Plaintiff, the Class, and consumers across the country in connection with their decision to
13
14   purchase Volkswagen Golf Diesel.  Defendants' representations and/or omissions were material

15   and were a substantial and material factor in Plaintiff's decision to purchase her Volkswagen

16   Golf Diesel. Had Plaintiff known the actual facts, she would not have purchased the Volkswagen

17   Golf Diesel and/or paid more than she would have had Defendants accurately disclosed the

Volkswagen Golf Diesel' characteristics.
18
19        102.   Defendants, directly and indirectly, have engaged in substantially similar conduct

with respect to Plaintiff and to each member of the Class.
20
21        103.   Plaintiff suffered injury in fact and lost money and/or property as a result of

22   Defendants' false and misleading advertising and Class Members suffered harm when they were

23   required to pay a purchase price in excess of what a Class member would have paid if

24   Defendants had accurately disclosed the Volkswagen Golf Diesel' characteristics and in the form

of decreased resale value of the Volkswagen Golf Diesel.
25
26        104.   As a result of Defendants' violations, Plaintiff and the Class are entitled to

27   equitable relief in the form of full restitution of all monies paid for the sales price of the

28   Volkswagen Golf Diesel, diminished value of the Volkswagen Golf Diesel, and/or disgorgement

of the profits derived from Defendants' false and misleading advertising.

105.    Plaintiff also seeks an order enjoining Defendants from such future conduct.

106.    WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### FIFTH CLAIM
### Common Law Fraud
(*On Behalf of Plaintiff and the Class*)

107.    Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

108.    Defendants, and each of them, misrepresented, omitted and concealed important facts from Plaintiff as alleged in the Complaint, including the following: "Representing to consumers purchasing the Volkswagen Golf Diesel that these vehicles' emissions, fuel efficiency and performance are as advertised and publicized . . . . Representing in their advertising emissions and environmental characteristics for the Volkswagen Golf Diesel that are false.

109.    Plaintiff and the Class Members have suffered harm as a result of these violations.

110.    Defendants' misrepresentations and omissions regarding the Volkswagen Golf Diesel' emissions, environmental standards, fuel efficiency and performance in their advertising, public statements and marketing were a material factor in inducing Plaintiff to purchase her Volkswagen Golf Diesel.  Plaintiff suffered injury in fact and lost money and/or property as a result of Defendants' unlawful business acts and practices and Class Members have suffered harm when each was required to pay a purchase price for their Volkswagen Golf Diesel in excess of what a Class Member would have paid if Defendants had accurately disclosed the Volkswagen Golf Diesel' characteristics and in the form of decreased resale value of the Vehicles.

111.    Defendants, and each of them, concealed from Plaintiff and the Class accurate information concerning the emissions, environmental friendliness, fuel efficiency and performance of the Volkswagen Golf Diesel.

112.    Defendants, and each of them, either knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

113.    Defendants, and each of them, had a duty to disclose the true characteristics of the

- 24 -

Volkswagen Golf Diesel due to their superior knowledge as well as due to their affirmative misrepresentations regarding the environmental friendliness of the vehicles.

114.    Defendants, and each of them, intended Plaintiff and the Class to rely on their representations.  Defendants, and each of them, intended to induce Plaintiff and the Class to: (a) purchase Volkswagen Golf Diesel; and (b) to purchase Volkswagen Golf Diesel at a higher purchase price than they would have absent Defendants' misrepresentations and concealment.

115.    Plaintiff and the Class reasonably relied on Defendants' representations regarding the characteristics of the Volkswagen Golf Diesel.  Plaintiff's and the Class' reasonable reliance on Defendants' representations was a substantial factor in causing the Plaintiff's and the Class' harm.

116.    As a direct and proximate result of Defendants' fraud, Plaintiff and the Class sustained damages in an amount to be determined at trial. The aforementioned acts of Defendants, and each of them, were done maliciously, oppressively, and fraudulently, and Plaintiff and the Class are entitled to punitive and exemplary damages in an amount be shown according to proof at trial.

117.    WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### SIXTH CLAIM
**Breach of Implied Warranty**
(*On Behalf of Plaintiff and the Class*)

118.    Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

119.    Defendants, and each of them, impliedly warranted to persons purchasing the Volkswagen Golf Diesel that these vehicles were what they were represented to be.

120.    These implied warranties induced the community, in general, and Plaintiff and other Class Members, in particular, to purchase the Volkswagen Golf Diesel from Defendants. These implied warranties were both directly and indirectly believed and relied upon by Plaintiff and Class Members and induced them to choose Defendants' Volkswagen Golf Diesel.  This reliance was based on Defendants' skill, expertise, and judgment in the design, manufacturing, testing, labeling, distribution, or sale of such products.

121.    At the time of the sale, Defendants had knowledge of the purpose for which their Volkswagen Golf Diesel were purchased and impliedly warranted the same to be, in all respects, fit and proper for this purpose.

122.    Defendants, and each of them, breached their aforesaid warranties in that the Volkswagen Golf Diesel were not fit for the purpose for which they were intended and used; rather Defendants sold to Plaintiff and the Class products which were not fit for use as represented.  The defect in the Volkswagen Golf Diesel existed prior to the delivery of the products to Plaintiff and the Class.

123.    Plaintiff and the Class have suffered injury in fact and have suffered an economic loss by, inter alia: (a) leasing or purchasing a product they never would have leased or purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented, (c) incurring costs for diminished resale value of the Volkswagen Golf Diesel purchased, (d) leasing and/or purchasing a product that poses a danger to the health and safety of the public, (e) incurring increased costs to repair the Volkswagen Golf Diesel purchased, and (f) incurring costs for loss of use.  Accordingly, the Court must issue an injunction restraining and enjoining Defendants from sending or transmitting false and misleading advertising to individuals or entities concerning the purported safety and quality o the Volkswagen Golf Diesel from Defendants.

124.    WHEREFORE, Plaintiff and the Class pray for judgment as set forth below.

### SEVENTH CLAIM
**Breach of Express Warranty**
(*On Behalf of Plaintiff and the Class*)

125.    Plaintiff incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter. Defendants, and each of them, expressly warranted to persons purchasing the Volkswagen Golf Diesel that the vehicles were what Defendants represented them to be.

126.    These express warranties induced the community, in general, and Plaintiff and members of the Class, in particular, to use and purchase Defendants' products. These express warranties were both directly and indirectly believed and relied upon by Plaintiff and the Class

- 26 -

1    and induced Plaintiff and the Class to choose the Volkswagen Golf Diesel.

2        127.    Defendants, and each of them, breached their aforesaid warranties in that their

3    products were not fit for the use and purpose expressly warranted by Defendants.

4        128.    Plaintiff and the Class have suffered injury in fact and have suffered an economic

5    loss by, inter alia: (a) leasing or purchasing a product they never would have leased or

6    purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics

7    render it of a lesser value than represented; (c) incurring costs for diminished resale value of the

8    products purchased; (d) leasing and/or purchasing a product that poses a danger to the health and

9    safety of not only the purchaser but also the public; (e) incurring increased costs to repair the

10   products purchased; and (f) incurring costs from loss of use.

11       129.    Accordingly, the Court must issue an injunction restraining and enjoining

12   Defendants from sending or transmitting false and misleading advertising to individuals or

13   entities concerning the purported safety and quality of the Volkswagen Golf Diesel from

14   Defendants.

15       130.    WHEREFORE, Plaintiff and the Class pray for judgment as set forth below.

16                                      **JURY DEMAND**

17       131.    Plaintiff hereby demands a jury trial on all issues and causes of action.

18                                    **PRAYER FOR RELIEF**

19       WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief as

20   follows:

21       1.    An Order appointing Plaintiff to represent the proposed Class pursuant to Fed. R.

22   Civ. P. 23(a) and designating him counsel as Class Counsel;

23       2.    An Order enjoining Defendants, and each of them, from future violations of the

24   CLRA, California Civil Code § 1750, et seq., 16 C.F.R. § 259.2, and California Business &

25   Professions Code §§ 17200, et seq., and 17500, et seq., as alleged herein;

26       3.    An Order awarding Plaintiff and the Class restitution and/or disgorgement;

27       4.    An Order awarding Plaintiff and the Class compensatory damages;

28       5.    An Order awarding Plaintiff and the Class punitive damages;

- 27 -

6.      An Order awarding Plaintiff attorneys' fees, expert witness fees and other costs, including pre-judgment and post-judgment interest thereon to the extent allowed by law; and

7.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED: December 8, 2014                    HOFFMAN EMPLOYMENT LAWYERS

_____

Stephen Noel Ilg
Attorneys for Plaintiffs

*Fusco v. Volkswagen*
Complaint